VERSO LAW GROUP LLP
GREGORY S. GILCHRIST (State Bar No. 111536)
RYAN BRICKER (Cal. Bar No. 269100)
PAYMANEH PARHAMI (Cal. Bar No. 335604)
VERSO LAW GROUP LLP
209 Kearny Street. 3rd Floor
San Francisco, CA 94108
Telephone: (415) 534-0495
Email: greg.gilchrist@versolaw.com
         ryan.bricker@versolaw.com
         paymaneh.parhami@versolaw.com

Attorneys for Plaintiff
LEVI STRAUSS & CO.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO., | Case No. 22-cv-04106 |
| Plaintiff, | **COMPLAINT FOR TRADEMARK INFRINGEMENT, DILUTION, AND UNFAIR COMPETITION (INJUNCTIVE RELIEF SOUGHT)** |
| v. | |
| DAVID CONNOLLY, | **JURY TRIAL DEMAND** |
| Defendant. | |

Plaintiff Levi Strauss & Co. ("LS&Co.") invented the blue jean in the 1870s to meet the needs of workers during the Gold Rush and has been manufacturing and selling jeans and other casual apparel for over 150 years.  The company's apparel production was protected as an "essential industry" during World War II, and exhibits at institutions such as the Smithsonian and Museum of Modern Art display photographs underscoring that Levi's® products are a "staple of American culture, symbolizing youth, freedom, and effortless cool."  (see https://www.sunset.com/lifestyle/levis-exhibit-debuts-at-the-contemporary-jewish-museum-san-francisco).

LS&Co. brands its apparel products using some of the oldest and most well-respected apparel trademarks in the world for use on its products, including the Arcuate, Tab, RED TAB, ORANGE TAB, and SILVER TAB marks shown below.

1

2

3

   

4

5

6

7

8        Every year, millions of jeans and other products are sold bearing one or more of these marks.

9   The "Arcuate" trademark (left image) was adopted in 1873 and registered in 1943.  The mark appears

10  on almost every pair of Levi's® brand jeans.  The "Tab" trademark (center and right images) appears

11  on almost all jeans sold under the Levi's brand, and is used on shirts, jackets, and accessories.

12  LS&Co. adopted the Tab trademark in 1936, registered in 1938, and has at various times been used as

13  part of the corporate logo, in retail signage and on the levi.com website as a signal for all the

14  company's products and services.  As shown above, the Tab trademark sometimes bears the famous

15  LEVI'S® trademark, and sometimes bears only the ® symbol.  LS&Co. also owns registered and

16  common law rights in word marks that reference the history and heritage of the Tab trademark,

17  including LS&Co.'s RED TAB, ORANGE TAB, and SILVERTAB marks.

18        This lawsuit is necessary because Defendant David Connolly has misappropriated LS&Co.'s

19  famous trademarks as symbols for his own jackets and denim recycling services.  While LS&Co.

20  encourages some of the environmental initiatives associated with Defendant's business, it cannot

21  tolerate Defendant's use of infringing trademarks to brand and commercialize those initiatives.  To

22  stop Defendant from continuing to misuse and trade on LS&Co.'s famous trademarks, and LS&Co.'s

23  reputation and goodwill, LS&Co. seeks preliminary and permanent injunctive relief as well as all

24  appropriate compensatory remedies and fees and costs necessitated by Defendant's conduct.  LS&Co.

25  complains as follows:

26              **JURISDICTION, VENUE, AND INTRA-DISTRICT ASSIGNMENT**

27        1.      Plaintiff LS&Co.'s claims arise under the Trademark Act of 1946 (the Lanham Act),

28  as amended by the Trademark Dilution Revision Act of 2006 (15 U.S.C. §§ 1051, *et seq.*).  This

Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1121 (Lanham Act). This Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367.

2.     LS&Co. is informed and believes that venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant transacts affairs in this district and sells or distributes his infringing products and services in this district, and because a substantial part of the events giving rise to the claims asserted arose in this district.

3.     Intra-district assignment to any division of the Northern District is proper under Local Rule 3-2(c) and the Assignment Plan of this Court as an "Intellectual Property Action."

## PARTIES

4.     LS&Co. is a Delaware corporation with its principal place of business at Levi's Plaza, 1155 Battery Street, San Francisco, California 94111.  Operating since approximately the 1850s, LS&Co. is one of the oldest and best-known apparel companies in the world.  It manufactures, markets, and sells a variety of apparel, including its traditional LEVI'S® brand products.

5.     LS&Co. is informed and believes that defendant David Connolly ("Defendant" or "Mr. Connolly") is an individual residing at 25 Burke Road, Somers, Victoria, 3927 in Australia.

6.     Defendant operates a denim jacket and recycling business under the infringing GREEN TAB trademark, through which Defendant manufactures, distributes, and/or sells, jackets bearing infringing marks and designs, and through which Defendant offers denim recycling services under the GREEN TAB word mark and a logo that shows a green tab protruding from a jacket pocket.  Defendant's infringing products and services are offered for sale and sold throughout the United States, including in this judicial district.

## FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS

7.     LS&Co. marks its LEVI'S® brand products with trademarks that are famous around the world.  For many years prior to the events giving rise to this Complaint and continuing to the present, LS&Co. annually has spent great amounts of time, money (tens and hundreds of millions of dollars per year), and effort advertising and promoting the products on which its trademarks are used

and has sold hundreds of millions of these products, all over the world, accounting for billions of dollars in sales, including sales throughout the United States and in California.  Through these investments and large sales, LS&Co. has created considerable goodwill and a reputation for high-quality, fashionable products.  LS&Co. continuously has used these trademarks, some for well over a century, to distinguish its products.  All of LS&Co.'s relevant marks were famous among the general consuming public long before Defendant began selling the products and services challenged in this Complaint.

8.      Most of LS&Co.'s trademarks are federally registered; all are in full force and effect, valid and protectable, and exclusively owned by LS&Co.  LS&Co. continuously has used each of its trademarks, from the registration date or earlier, until the present and during all times relevant to LS&Co.'s claims.

**LS&Co.'s Tab Trademark**

9.      LS&Co. owns the famous Tab Device Trademark (the "Tab trademark"), which, in one configuration, consists of a textile marker or other material sewn into the pocket seams or one of the regular structural seams of the garment.  LS&Co. uses the Tab trademark on LEVI'S® jeans, pants, jackets, shirts, skirts, shorts, accessories, and a variety of other clothing products.

10.     LS&Co. began to display the Tab trademark on the rear pocket of its pants in 1936 when its then National Sales Manager, Leo Christopher Lucier, proposed placing a folded cloth ribbon in the structural seams of the rear pocket.  The purpose of this "tab" was to provide "sight identification" of LS&Co.'s products.  Given the distinctiveness of the Tab trademark, Mr. Lucier asserted that "no other maker of overalls can have any other purpose in putting a colored tab on an outside patch pocket, unless for the express and sole purpose of copying our mark and confusing the customer."

11.     The Tab trademark is valid and exclusively owned by LS&Co.  The Tab trademark is famous and recognized around the world and throughout the United States by consumers as signifying authentic, high-quality LEVI'S® garments.  The Tab trademark became famous prior to Defendant's conduct that is the subject of this Complaint.

/ / /

12.     Examples of LS&Co.'s use of its Tab trademark on LEVI'S® garments are shown here:

  

  

  

13.     In addition to using the Tab trademark on products, LS&Co. also uses the mark to denote retail services, including use of the trademark as its main service mark (collectively "Retail Services Tab Trademark") for several years. Examples of these uses include as follows:

 

14.     Registrations for its Tab trademark, attached as **Exhibit A**.  The federal registrations have become incontestable under the provisions of 15 U.S.C. § 1065.

        a.     U.S. Registration No. 516,561 (first used as early as September 1, 1936; registered October 18, 1949);

        b.     U.S. Registration No. 1,157,769 (first used as early as September 1, 1936; registered June 16, 1981);

        c.     U.S. Registration No. 2,791,156 (first used as early as September 1, 1936; registered December 9, 2003);

        d.     U.S. Registration No. 356,701 (first used as early as September 1, 1936; registered May 10, 1938);

        e.     U.S. Registration No. 577,490 (first used as early as September 1, 1936; registered July 21, 1953);

        f.     U.S. Registration No. 774,625 (first used as early as May 22, 1963; registered August 4, 1964);

        g.     U.S. Registration No. 775,412 (first used as early as October 9, 1957; registered August 18, 1964);

        h.     U.S. Registration No. 2,726,253 (first used as early as March 7, 1969; registered June 17, 2003);

        i.     U.S. Registration No. 2,620,144 (first used as early as February, 1999, registered September 17, 2002); and

        j.     California Registration No. 052312 (first used as early as March 7, 1969; registered June 12, 1974).

/ / /

**LS&Co.'s RED TAB, ORANGE TAB, and SILVERTAB Word Marks**

15.     LS&Co. also owns registered and common law rights in word marks that reference the history and heritage of the Tab trademark, including LS&Co.'s RED TAB, ORANGE TAB and SILVERTAB marks (Reg. Nos. 6,234,580, 5,495,150, and 2,132,082).  Copies of these registrations are included as **Exhibit B**.

16.     LS&Co. has used the RED TAB word mark for years in connection with its customer loyalty program, which gives members access to exclusive product releases, discounts, and a variety of other benefits.  LS&Co. also sells a variety of RED TAB-branded products, including lines of sweatshirts, sweatshorts, hoodies, and other leisurewear.  LS&Co. initially introduced its ORANGE TAB line of products in the 1960s, using the name to distinguish the company's more experimental and unique products, designs, and silhouettes from its traditional denim line.  Over the years, LS&Co. has put out a wide range of ORANGE TAB-branded products, including jackets, vests, overalls, and sweatshirts.  LS&Co. introduced SILVERTAB jeans and other apparel in the late-1980s, and designed the line with the rise of skateboarding, hip hop culture, and a variety of underground music and counterculture scenes in mind.  LS&Co. recently launched a limited edition SILVERTAB capsule through its Levi's® SecondHand store where it also offers ORANGE TAB products.  ORANGE TAB and SILVERTAB products, and many other past or global styles, have been refreshed and sold as reissues in recent LEVI'S® assortments.  Retailers and the public know and refer to LS&Co.'s iconic products as RED TAB, ORANGE TAB and SILVERTAB, among other references, depending on the color of the Tab trademark, and it uses all colors for its tabs including green.  Together, the Tab Trademark and LS&Co.'s family of TAB-formative word marks are referenced as the "Tab Mark Family."

17.     The Tab Mark Family is valid and protectable, and exclusively owned by LS&Co.  The Tab Mark Family is famous and recognized around the world and throughout the United States by consumers as signifying authentic, high-quality LEVI'S® garments.  The Tab Mark Family became famous prior to Defendant's conduct that is the subject of this Complaint.

/ / /

/ / /

**LS&Co.'s Arcuate Trademark**

18.     LS&Co. also owns the famous Arcuate Stitching Design Trademark (the "Arcuate trademark"), which consists of a distinctive pocket stitching design that is the oldest known apparel trademark in the United States still in continuous use.  LS&Co. has used the Arcuate trademark continuously since 1873 in interstate commerce on clothing products. LS&Co. first used the Arcuate trademark on jeans and later used it on other products as well.

19.     LS&Co. owns, among others, the following United States and California Registrations for its Arcuate trademark, attached as **Exhibit C**.  The federal registrations have become incontestable under the provisions of 15 U.S.C. § 1065.

a.     U.S. Registration No. 404,248 (first used as early as 1873; registered November 16, 1943);

b.     U.S. Registration No. 1,139,254 (first used as early as 1873; registered September 2, 1980); and

c.     U.S. Registration No. 2,794,649 (first used as early as 1873; registered December 16, 2003).

20.     The Arcuate trademark is valid and protectable, and exclusively owned by LS&Co.  The Arcuate trademark is famous and is recognized around the world and throughout the United States by consumers as signifying authentic, high-quality LEVI'S® jeans.  The Arcuate trademark became famous prior to Defendant's conduct that is the subject of this Complaint.

21.     In addition to producing its own branded apparel, LS&Co. sometimes enters license agreements so that licensees may produce authorized products to LS&Co.'s specifications.  The Arcuate trademark and marks within the Tab Mark Family may be licensed for this purpose.  In addition, LS&Co. often engages in collaborations with designers and other brands to produce a jointly created and sponsored item, including many designers and brands with a public image and brand equity that are highly similar to Defendant's image.

/ / /

/ / /

**LS&Co.'s Services Related to Sustainability Efforts**

22.     LS&Co. is a purpose-driven company.  For more than a century, LS&Co. has sought to deliver the highest quality apparel products while making an outsized impact on the world.  In three out of the last five years, LS&Co. has been listed on Fortune's "Change the World" list for two initiatives: LS&Co.'s "Buy Better, Wear Longer" advertising campaign, and LS&Co.'s paid leave programs and advocacy for a federal paid leave policy for all American workers.  The Company receives an A- CDP score.

23.     For many years LS&Co. has devoted substantial resources and effort to environmental initiatives and sustainability and has marketed services and products related to these initiatives using some or all of its famous trademarks, including the LEVI'S® mark, as well as the Tab Mark Family and Arcuate trademark.

24.     Among these initiatives, LS&Co. has used, within its Tab Mark Family, a green lettered tab to denote its efforts to create jeans produced with more climate friendly processes. The jeans below, for example, currently are available on the secondary market:









☆☆☆☆☆

Eco Levi S 504 Jeans W 33 L 32

$50.88

☆☆☆☆☆

Vintage Levi's 501 Green Tab Jeans

$50.88

☆☆☆☆☆

ORIGINAL LEVIS(LIMITED)GREEN TAB,

$51.88

☆☆☆☆☆

Vintage Green Tag Levi's | Vintage

$51.88

25.     In 2011, LS&Co. released its Water<Less® line of jeans which has reduced the water consumption in the finishing process by making simple changes to the process.  This innovative process reduces the number of washing machine cycles by combining multiple wet cycle processes into a single wet process, incorporates ozone processing into the garment washing, and removes the water from the stone wash.  Through 2020, 67% of all LS&Co. products were made using Water<Less® finishing techniques or in facilities that meet LS&Co.'s water recycling and reuse guidelines. As a result, LS&Co. has saved more than 3 billion liters of water (and recycled another 5 billion liters).  An example follows:

26.    Recently, LS&Co. released a comprehensive sustainability report, detailing its longstanding commitment to environmental transparency and establishing a renewed framework – climate, consumption, and community – for its efforts going forward.  Climate change is the existential crisis of our time – a threat to global commerce and communities – and LS&Co. prioritizes the reduction of its carbon footprint and advocating for comprehensive climate action throughout numerous aspects of its business.  As the report details, LS&Co. donated $2.4 million in cash grants to climate change initiatives in 2020 alone through the Red Tab Foundation.

27.    As a result of these initiatives and investments, LS&Co. has established common law rights in its famous trademarks – including the Tab Mark Family specifically – for informational, educational, and philanthropic services related to the environment, and for climate friendly products and production practices.

**Mr. Connolly's Infringement of LS&Co.'s Trademarks**

28.    Beginning at some point in the past and continuing until the present, Mr. Connolly has manufactured, promoted, and sold garments that infringe and dilute LS&Co.'s trademarks.  Additionally, Mr. Connolly has used and continues to use the GREEN TAB business name in the promotion of his jackets and denim recycling services that infringes and dilutes LS&Co.'s trademarks.

29.    Underscoring Mr. Connolly's effort to misappropriate LS&Co.'s reputation and famous trademarks, Mr. Connolly has applied to register the mark GREEN TAB at the United States Patent and Trademark Office (U.S. Application No. 79/308,198) (hereinafter "GREEN TAB Mark").  Mr. Connolly has used and continues to use the GREEN TAB Mark as a business name in the promotion of his jackets and denim recycling services, through his websites www.greentab.clothing and www.truckerjacket.com.  LS&Co. is informed and believes the website www.truckerjacket.com is also owned and operated by Mr. Connolly – Mr. Connolly runs the blog on www.greentab.clothing; the blog links to a Green Tab Clothing Facebook page; and the Facebook page promotes www.truckerjacket.com.  Mr. Connolly's use of the GREEN TAB Mark will lead the public to conclude, incorrectly, that he is or has been,

or that his goods and services displaying or offered under the GREEN TAB Mark are or have

been, authorized, sponsored, or licensed by LS&Co.  The likelihood of confusion is

exacerbated by the fact that Mr. Connolly is using the GREEN TAB Mark to promote and sell

the same types of apparel products and sustainability services that LS&Co. markets and sells in

connection with its famous trademarks, including the Tab Mark Family.  An example of a

mock-up of Mr. Connolly's goods, offered under his GREEN TAB mark, and bearing a green

tab device nearly identical to LS&Co.'s Tab trademark, follows, along with the recycling label

sold in connection with the mock-up image:

 

       30.     Additionally, Mr. Connolly has manufactured, marketed, and/or sold products

bearing copies of LS&Co.'s Arcuate trademark and Tab Mark Family through the website

www.truckerjacket.com.  Below are examples of these infringements:

1
2
3
4
5
6
7
8
9
10

  

11
12
13
14
15
16
17
18
19

  

20   31.   LS&Co. is informed and believes that Mr. Connolly has manufactured,

21  marketed, and sold products bearing copies of the Arcuate trademark and Tab Mark Family,

22  has offered and promoted products and services under the GREEN TAB Mark and green tab

23  device, has profited, and continues to profit from these sales.

24   32.   Mr. Connolly's actions have caused and will cause LS&Co. irreparable harm

25  for which money damages and other remedies are inadequate.  Unless Mr. Connolly is

26  restrained preliminarily and permanently by this Court, he will continue and/or expand his

27  illegal activities and otherwise continue to cause great and irreparable damage and injury to

28  LS&Co. by, among other things:

a.  Depriving LS&Co. of its rights to use and control use of its trademarks and maintain its reputation with consumers, licensees and collaborators, including the exclusive use of its trademarks on products and services that LS&Co.'s creates, produces, licenses, and sells;

b.  Creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of the infringing products and services;

c.  Causing the public falsely to associate LS&Co. with Mr. Connolly and/or his products and services, or vice versa;

d.  Causing incalculable and irreparable damage to LS&Co.'s goodwill, reputation and standing with consumers, licensees and collaborators;

e.  Diluting the capacity of its Tab Mark Family and Arcuate trademark to differentiate LEVI'S® products from others;

f.  Causing LS&Co. to lose sales of its genuine clothing products; and

g.  Causing others to believe that the distinctive features of the Tab Mark Family and Arcuate trademark may be misappropriated for their use.

## FIRST CLAIM
## <u>FEDERAL TRADEMARK INFRINGEMENT</u>
### (15 U.S.C. §§ 1114-1117; Lanham Act § 32)

33.  LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 32 of this Complaint.

34.  Without LS&Co.'s consent, Defendant has used – in connection with the sale, offering for sale, distribution, or advertising of his products and services – trademarks and designs, including the GREEN TAB mark and stitching and pocket tab designs (examples of which are shown in this Complaint) that infringe upon LS&Co.'s registered Tab Mark Family and Arcuate trademark.

35.  Defendant's acts of willful trademark infringement have been committed with the intent to cause confusion, mistake, or deception, cause harm to LS&Co. and consumers, and are in violation of 15 U.S.C. § 1114.

36.     As a direct and proximate result of Defendant's infringing activities, LS&Co. is entitled to recover all of Defendant's unlawful profits and LS&Co.'s substantial damages under 15 U.S.C. 1117(a).

37.     Defendant's infringement of LS&Co.'s Tab Mark Family and Arcuate trademark is an exceptional case and was intentional, entitling LS&Co. to treble the amount of its damages and Defendant's profits, and to an award of attorneys' fees under 15 U.S.C. §§ 1117(a).

38.     LS&Co. is entitled to injunctive relief pursuant to 15 U.S.C. 1116(a).

### SECOND CLAIM
### FEDERAL UNFAIR COMPETITION
**(False Designation of Origin and False Description)**
**(15 U.S.C. § 1125(a); Lanham Act § 43(a))**

39.     LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 38 of this Complaint.

40.     Defendant's use of his infringing trademarks and designs – including the GREEN TAB mark and the stitching and pocket tab designs shown by example in this Complaint – tends falsely to describe his products and services within the meaning of 15 U.S.C. § 1125(a)(1).  Defendant's conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant and Defendant's products and services, to the detriment of LS&Co. and consumers in violation of 15 U.S.C. § 1125(a)(1).

41.     As a direct and proximate result of Defendant's willful infringing activities, LS&Co. is entitled to recover all of Defendant's unlawful profits and LS&Co.'s substantial damages under 15 U.S.C. § 1117(a).

42.     Defendant's infringement of LS&Co.'s Tab Mark Family and Arcuate trademark is an exceptional case and was intentional, entitling LS&Co. to treble the amount of its damages and Defendant's profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a).

43.     LS&Co. is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

### THIRD CLAIM
### FEDERAL DILUTION OF FAMOUS MARKS
**(Trademark Dilution Revision Act of 2006)**
**(15 U.S.C. § 1125(c); Lanham Act § 43(c))**

44.     LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 43 of this Complaint.

45.     LS&Co.'s Tab Mark Family and Arcuate trademark are distinctive and famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), and each was distinctive and famous prior to Defendant's conduct as alleged in this Complaint.

46.     Defendant's conduct – including Defendant's use of the GREEN TAB mark and the stitching and pocket tab designs shown by example in this Complaint – is likely to cause dilution of LS&Co.'s Tab Mark Family and Arcuate trademark by diminishing each of their distinctiveness in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

47.     LS&Co. is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c).

### FOURTH CLAIM
### CALIFORNIA TRADEMARK INFRINGEMENT AND DILUTION
**(Cal. Bus. & Prof. Code §§ 14200 *et seq.*; Cal. Bus. & Prof. Code § 14247)**

48.     LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 46 of this Complaint.

49.     LS&Co. owns registered and common law rights in its Tab Mark Family and Arcuate trademark.

50.     Defendant is using trademarks and designs – including the GREEN TAB mark and the stitching and pocket tab designs shown by example in this Complaint – that are identical or nearly identical to the Tab Mark Family and Arcuate trademark, without the consent of LS&Co.

51.     LS&Co.'s Tab Mark Family and Arcuate trademark each became famous in California long before Defendant began using his infringing trademarks and designs.

52.     Defendant's use of his infringing trademarks and designs is likely to cause

consumer confusion about the source of Defendant's goods and services or about a relationship

between LS&Co. and Defendant, and is likely to dilute LS&Co.'s Tab Mark Family and

Arcuate trademark, and each of them, in violation of California Business & Professions Code

§§ 14200 et seq., and California Business & Professions Code § 14247.

53.     Defendant infringed and diluted LS&Co.'s Tab Mark Family and Arcuate

trademark with knowledge and intent to cause confusion, mistake, or deception.

54.     Defendant's conduct is aggravated by that kind of willfulness, wantonness,

malice, and conscious indifference to the rights and welfare of LS&Co. for which California

law allows the imposition of exemplary damages.

55.     Pursuant to California Business & Professions Code §§ 14247 and 14250,

LS&Co. is entitled to injunctive relief and damages in the amount of three times Defendant's

profits and three times all damages suffered by LS&Co. by reason of Defendant's

manufacture, use, display, and sale of infringing goods and services.

### FIFTH CLAIM
### CALIFORNIA UNFAIR COMPETITION
#### (Cal. Bus. & Prof. Code § 17200)

56.     LS&Co. realleges and incorporates by reference each of the allegations

contained in paragraphs 1 through 54 of this Complaint.

57.     Defendant's conduct constitutes "unlawful, unfair or fraudulent business act[s]

or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of

California Business & Professions Code section 17200.

58.     LS&Co. is entitled to injunctive relief preventing the conduct alleged in this

Complaint.

### PRAYER FOR JUDGMENT

WHEREFORE, LS&Co. prays that this Court grant it the following relief:

1.     Adjudge that LS&Co.'s Tab Mark Family and Arcuate trademark, and each of them,

have been infringed by Defendant in violation of LS&Co.'s rights under common law, 15 U.S.C. §

1114, and/or California law;

2.     Adjudge that Defendant has competed unfairly with LS&Co. in violation of

1    LS&Co.'s rights under common law, 15 U.S.C. § 1125(a), and/or California law;

2         3.    Adjudge that Defendant's activities are likely to dilute LS&Co.'s famous Tab Mark

3    Family and Arcuate trademark, and each of them, in violation of LS&Co.'s rights under common

4    law, 15 U.S.C. § 1125(c), and/or California law;

5         4.    Adjudge that Defendant and his agents, employees, attorneys, successors, assigns,

6    affiliates, and joint venturers and any person(s) in active concert or participation with it, and/or any

7    person(s) acting for, with, by, through or under it, be enjoined and restrained at first during the

8    pendency of this action and thereafter permanently from:

9              a.    Manufacturing, producing, sourcing, importing, exporting, selling,

10                   buying, offering for sale, distributing, licensing, advertising, or

11                   promoting any goods or services, using any words, symbols or designs

12                   that so resemble LS&Co.'s Tab Mark Family and Arcuate trademark, or

13                   any of them, as to be likely to cause confusion, mistake or deception, on

14                   or in connection with any product or service that is not authorized by or

15                   for LS&Co., including without limitation, the infringing trademarks and

16                   designs that are the subject of this Complaint and for which Defendant

17                   is responsible, or any other approximation of LS&Co.'s trademarks;

18             b.    Using any word, term, name, symbol, device, or combination thereof

19                   that causes or is likely to cause confusion, mistake, or deception as to

20                   the affiliation or association of Defendant or his products and services

21                   with LS&Co. or as to the origin of Defendant's goods and services, or

22                   any false designation of origin, false or misleading description or

23                   representation of fact, or any false or misleading advertising;

24             c.    Claiming trademark rights in the GREEN TAB Mark, the pocket

25                   stitching and tab designs shown by example in this Complaint, or any

26                   other word, symbol, or design that is confusingly similar to the Tab

27                   Mark Family and Arcuate trademark, including by applying now or in

28                   the future for federal registration of trademarks comprising the GREEN

TAB Mark or any other word, symbol, or design that is similar to the

Tab Mark Family and Arcuate trademark;

d.   Infringing LS&Co.'s rights in and to any of its trademarks in its

LEVI'S® brand products or otherwise damaging LS&Co.'s goodwill or

business reputation;

e.   Further diluting the Tab Mark Family and Arcuate trademark;

f.   Otherwise competing unfairly with LS&Co. in any manner; and

g.   Continuing to perform in any manner whatsoever any of the other acts

complained of in this Complaint;

5.   Order that registration of U.S. Application No. 79/308,198 must be refused, and/or

that any registration resulting from the application must be cancelled, and address its certified order

to the USPTO, Office of the Solicitor, Mail Stop 8, Director of the USPTO, P.O. Box 1450,

Alexandria, Virginia 22313;

6.   Adjudge that Defendant be required immediately to supply LS&Co.'s counsel with a

complete list of individuals and entities from whom or which it purchased, and to whom or which it

sold, offered for sale, distributed, advertised or promoted, infringing products and services as alleged

in this Complaint;

7.   Adjudge that Defendant be required immediately to deliver to LS&Co.'s counsel its

entire inventory of infringing products and services, including without limitation pants, shirts, and

any other clothing, packaging, labeling, advertising and promotional material, and all plates,

patterns, molds, matrices and other material for producing or printing such items, domain names, or

8.   social media handles that are in its possession or subject to its control and that

infringe or facilitate infringement of LS&Co.'s trademarks as alleged in this Complaint;

9.   Adjudge that Defendant, within thirty (30) days after service of the judgment

demanded herein, be required to file with this Court and serve upon LS&Co.'s counsel a written

report under oath setting forth in detail the manner in which it has complied with the judgment;

10.   Adjudge that LS&Co. recover from Defendant its damages and lost profits, and

Defendant's profits, in an amount to be proven at trial, as well as punitive damages under California

1   law; and damages due to LS&Co. as a result of the terms of the parties' settlement agreement;

2       11.     Adjudge that Defendant be required to account for any profits that are attributable to

3   its illegal acts, and that LS&Co. be awarded (1) Defendant's profits and (2) all damages sustained by

4   LS&Co., under 15 U.S.C. § 1117, plus prejudgment interest;

5       12.     Adjudge that the amounts awarded to LS&Co. pursuant to 15 U.S.C. § 1117 shall be

6   trebled;

7       13.     Order an accounting of and impose a constructive trust on all of Defendant's funds

8   and assets that arise out of its infringing and dilutive activities;

9       14.     Adjudge that LS&Co. be awarded its costs and disbursements incurred in connection

10  with this action, including LS&Co.'s reasonable attorneys' fees and investigative expenses; and

11      15.     Adjudge that all such other relief be awarded to LS&Co. as this Court deems just and

12  proper.

13  Dated:  July 13, 2022                    Respectfully submitted,

14                                           VERSO LAW GROUP LLP

15

16                                           By: */s/ Ryan Bricker*
17                                           Gregory S. Gilchrist
                                             Ryan Bricker
18                                           Paymaneh Parhami

19                                           Attorneys for Plaintiff
                                             LEVI STRAUSS & CO.

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Levi Strauss & Co. demands that this action be tried to a jury.

Dated:  July 13, 2022                                  Respectfully submitted,

                                                       VERSO LAW GROUP LLP


                                                       By: /s/ Ryan Bricker
                                                       Gregory S. Gilchrist
                                                       Ryan Bricker
                                                       Paymaneh Parhami

                                                       Attorneys for Plaintiff
                                                       LEVI STRAUSS & CO.