UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LEVI STRAUSS & CO., <br>              Plaintiff, <br> v. <br> DAVID JAMES CONNOLLY, <br>              Defendant. | Case No. 22-cv-04106-VKD <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** <br><br> Re: Dkt. No. 26 |

Plaintiff Levi Strauss & Co. ("LS&Co.") sues defendant David James Connolly, asserting federal and state law claims for trademark infringement, trademark dilution, and unfair competition.[1] Mr. Connolly moves to dismiss the complaint, principally on the ground that this Court lacks personal jurisdiction over him. Mr. Connolly also contends that dismissal is warranted based on improper venue, insufficient service of process, failure to state a claim for relief, and failure to join an indispensable party. LS&Co. opposes the motion. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court denies Mr. Connolly's motion to dismiss the complaint.[2]

---

[1] Specifically, LS&Co. asserts the following five claims for relief: federal trademark infringement, 15 U.S.C. §§ 1114-1117, Lanham Act § 32 (Claim 1); federal unfair competition (false designation of origin and false description), 15 U.S.C. § 1125(a), Lanham Act § 43(a) (Claim 2); federal dilution of famous marks, 15 U.S.C. § 1125(c), Lanham Act § 43(c) (Claim 3); California trademark infringement and dilution, Cal. Bus. & Prof. Code §§ 14200, *et seq.*, Cal. Bus. & Prof. Code § 14247 (Claim 4); and California unfair competition, Cal. Bus. & Prof. Code § 17200 (claim 5).

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 9, 15.

## I. BACKGROUND

LS&Co. is a well-known clothing company based in San Francisco, California that manufactures, markets, and sells a variety of apparel products, including its traditional LEVI'S® brand products. Dkt. No. 1 ¶ 4. According to the complaint, LS&Co. owns a number of registered trademarks, including the "Arcuate" trademark and the "Tab" trademark. *Id*. at 1-2 & ¶¶ 9-20. LS&Co. says that it "also owns registered and common law rights in word marks that reference the history and heritage of the Tab trademark, including LS&Co.'s RED TAB, ORANGE TAB, and SILVERTAB marks," collectively referred to in the complaint as the "Tab Mark Family." *Id*. at 2; *see also id.* ¶¶ 9-17.

Additionally, LS&Co. says that it has "devoted substantial resources and effort to environmental initiatives and sustainability and has marketed services and products related to these initiatives using some or all of its famous trademarks, including the LEVI'S® mark, as well as the Tab Mark Family and Arcuate trademark." *Id*. ¶ 23. These initiatives include efforts to produce jeans using more climate-friendly processes. As a result, LS&Co. says that it "has established common law rights in its famous trademarks—including the Tab Mark Family specifically—for informational, educational, and philanthropic services related to the environment, and for climate friendly products and production practices." *Id*. ¶¶ 24-27.

Mr. Connolly is domiciled in Australia. *See* Dkt. No. 26-1 ¶ 2; *see also* Dkt. No. 1 ¶ 5. LS&Co. alleges that he operates a denim jacket and recycling business, through the websites www.truckerjacket.com and www.greentab.clothing, using an infringing GREEN TAB word mark and a logo that shows a green tab protruding from a jacket pocket. Dkt. No. 1 ¶¶ 6, 28-31. LS&Co. claims that Mr. Connolly's use of the GREEN TAB mark will lead the public to incorrectly conclude that his goods and services are authorized, sponsored, or licensed by LS&Co, and that the "likelihood of confusion is exacerbated by the fact that Mr. Connolly is using the GREEN TAB Mark to promote and sell the same types of apparel products and sustainability services that LS&Co. markets and sells in connection with its famous trademarks, including the Tab Mark Family." *Id*. ¶ 29. Additionally, LS&Co. alleges that Mr. Connolly has "manufactured, marketed, and/or sold products bearing copies of LS&Co.'s Arcuate trademark and Tab Mark

Family through the website www.truckerjacket.com." *Id.* ¶ 30.  LS&Co. notes that Mr. Connolly has also applied to register the GREEN TAB mark at the U.S. Patent and Trademark Office. *Id.* ¶ 29.

Mr. Connolly acknowledges that he operates www.truckerjacket.com and promotes the recycling of denim.  At the motion hearing, he asserted that the www.greentab.clothing website was part of a school project, but he has submitted no evidence that the site is not being used for commercial purposes.  In any event, he does not dispute that he markets and sells denim products through the www.truckerjacket.com website; "completed research and development in partnership with Cotton Incorporated . . . under brand GREEN TAB"; and applied to register the GREEN TAB mark in the United States and in Australia.  *See* Dkt. No. 13 at 2.[3]  However, Mr. Connolly contends that he does not design or manufacture the allegedly infringing jacket identified in LS&Co.'s complaint, that LS&Co. does not own any rights in a GREEN TAB mark, and that the www.truckerjacket.com website uses technology "to filter out Levi Strauss & Co related search traffic."  *See* Dkt. No. 13 at 3; Dkt. No. 26 at 5.  Further, Mr. Connolly maintains that LS&Co. filed the present lawsuit here based on a single sales transaction for a jacket, delivered to Palo Alto, California, that was purchased at the behest of LS&Co.'s litigation counsel.  *See* Dkt. No. 22-1 ¶ 3; Dkt. No. 26-1 ¶ 7.3.

Although Mr. Connolly filed an "Answer" to the complaint, in that document (and in a subsequent case management statement), he appeared to contest that the Court properly may exercise personal jurisdiction over him.  *See* Dkt. Nos. 13, 19.  In response to the Court's requests for clarification, Mr. Connolly confirmed that he challenges personal jurisdiction in this Court. *See* Dkt. Nos. 21-24.  The present motion was filed pursuant to the Court's order setting a briefing and hearing schedule (Dkt. No. 25).[4]

---

[3] The record indicates that Mr. Connolly's U.S. trademark application has been suspended pending the outcome of the present litigation.  *See* Dkt. No. 27-12.

[4] As discussed at the February 28, 2023 motion hearing, in resolving the present motion, the Court concludes that this action may proceed beyond the pleadings, but does not address the ultimate merits of LS&Co.'s claims for relief.

## II.     LEGAL STANDARD

On a Rule 12(b)(2) motion challenging personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "When a motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021) (internal quotations and citation omitted); *see also Boschetto*, 539 F.3d at 1015 (same). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotations and citations omitted); *see also Boschetto*, 539 F.3d at 1015 (same). However, the Court does not assume the truth of allegations in a pleading that are contradicted by affidavit, *Ayla, LLC*, 11 F.4th at 978, and "'[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor,'" *Boschetto*, 539 F.3d at 1015 (quoting *Schwarzenegger*, 374 F.3d at 800); *see also Ayla, LLC*, 11 F.4th at 978 ("factual conflicts between dueling affidavits must be resolved in the plaintiff's favor.") (internal quotations and citation omitted).

## III.    DISCUSSION

### A.     Personal Jurisdiction

LS&Co. contends that this Court has nationwide jurisdiction over Mr. Connolly pursuant to Federal Rule of Civil Procedure 4(k)(2), the federal long-arm statute. Rule 4(k)(2) provides that "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). Thus, "[p]ersonal jurisdiction is proper under Rule 4(k)(2) when (1) the action arises under federal law, (2) 'the defendant is not subject to jurisdiction in any state's courts of general jurisdiction,' and (3) the court's exercise of jurisdiction comports with due process." *Ayla, LLC*, 11 F.4th at 978 (quoting Fed. R. Civ. P. 4(k)(2)). While "courts have rarely exercised jurisdiction under 4(k)(2)," the Ninth Circuit has

noted that the rule "is not disfavored" and does not impose a higher standard for due process; rather, "this rarity simply reflects that situations where a defendant has the requisite contacts with the United States but not with any one state are unusual." *Id*. at 979 n.1.

LS&Co. satisfies the first requirement, as it has asserted claims under federal trademark law. *See Ayla, LLC*, 11 F.4th at 978 (plaintiff's "Lanham Act action relating to trademark infringement and false designation of origin undisputedly arises under federal law[.]").

"For the second requirement, [LS&Co.] is not required to establish a lack of jurisdiction in every other state; rather, the second requirement is met if [Mr. Connolly] fails to select another state where jurisdiction is appropriate." *Riot Games, Inc. v. Suga PTE, Ltd.*, — F. Supp. 3d—, No. 2:22-cv-00429-SPG-KS, 2022 WL 17253916, at *4 (C.D. Cal. Nov. 3, 2022) (citing *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 461-62 (9th Cir. 2007)); *see also Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1040 (9th Cir. 2022) (same). Mr. Connolly does not argue that there is another state within the United States where jurisdiction would be proper. The second requirement of Rule 4(k)(2) therefore also is met.

For the third requirement regarding due process, the "analysis 'is nearly identical to traditional personal jurisdiction analysis . . . [but] rather than considering contacts between [the defendant] and the forum state, [courts] consider contacts with the nation as a whole.'" *Ayla, LLC*, 11 F.4th at 979 (quoting *Holland Am. Line*, 485 F.3d at 462); *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006) (same). "A district court's exercise of jurisdiction over a nonresident defendant comports with due process when the defendant has at least 'minimum contacts' with the forum and subjecting the defendant to an action in that forum would 'not offend traditional notions of fair play and substantial justice.'" *Ayla, LLC*, 11 F.4th at 979 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

In evaluating whether the exercise of personal jurisdiction over Mr. Connolly comports with due process, this Court therefore looks to the United States as the relevant forum. LS&Co. does not contend that this Court has general jurisdiction over Mr. Connolly. Accordingly, specific jurisdiction is the sole asserted basis for the exercise of personal jurisdiction.

### 1. Specific Jurisdiction

Specific jurisdiction exists over Mr. Connolly (1) if he "purposefully direct[s] his activities or consummate[s] some transaction with the [United States] or resident thereof; or perform[s] some act by which he purposefully avails himself of the privilege of conducting activities in the [United States], thereby invoking the benefits and protections of its laws"; (2) LS&Co.'s claims arise out of or relate to Mr. Connolly's forum-related activities; and (3) the exercise of jurisdiction "comport[s] with fair play and substantial justice, i.e., it must be reasonable." *Boschetto*, 539 F.3d at 1016; *see also Ayla, LLC*, 11 F.4th at 979 (same). LS&Co. "bears the burden on the first two prongs." *Boschetto*, 539 F.3d at 1016. If LS&Co. "fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." *Id*. (citing *Pebble Beach Co.*, 453 F.3d at 1155). But if LS&Co. establishes the first two prongs, then Mr. Connolly must present a "'compelling case' that the exercise of jurisdiction would not be reasonable." *Id*.; *see also Lang Van, Inc.*, 40 F.4th at 1041 ("Under Rule 4(k)(2), . . . once the plaintiff has satisfied the first two prongs, the burden then shifts to the defendant to show that the jurisdiction would be unreasonable.").

#### a. Purposeful direction

The "analysis under the 'purposeful availment or direction' prong of the specific jurisdiction test turns on the nature of the underlying claims." *Ayla, LLC*, 11 F.4th at 979. Courts focus "on purposeful availment when the underlying claims sound in contract and on purposeful direction when they arise from alleged tortious conduct committed outside the forum." *Id*. "Trademark infringement is treated as tort-like for personal jurisdiction purposes," and thus a purposeful direction analysis applies here. *Id*.; *see also AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) ("[Plaintiff] alleges copyright and trademark infringement claims, which sound in tort, so we apply a 'purposeful direction' analysis and ask whether [defendant] has purposefully directed activities at the United States.").

"Where allegedly tortious conduct takes place *outside* the forum and has effects inside the forum," courts examine purposeful direction using the so-called *Calder* "effects test." *AMA Multimedia, LLC*, 970 F.3d at 1208 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Under that test, and for Rule 4(k)(2) purposes, a defendant purposefully directs his activities towards the United

6

1  States when the defendant "(1) commit[s] an intentional act, (2) expressly aimed at the [United
2  States], (3) causing harm that the defendant knows is likely to be suffered in the [United States]."
3  *Id.*; *see also Ayla, LLC*, 11 F.4th at 980.  Courts should not focus too narrowly on the third prong,
4  as "something more" than a merely foreseeable effect is needed to establish purposeful direction.
5  *Pebble Beach Co.*, 453 F.3d at 1156.

### i. Intentional acts

"For purposes of jurisdiction, a defendant acts intentionally when he acts with 'an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act.'" *AMA Multimedia LLC*, 970 F.3d at 1209 (quoting *Schwarzenegger*, 374 F.3d at 806).  "The threshold of what constitutes an intentional act is relatively low" and "includes engaging in sales transactions outside the forum state, advertising a product outside the forum, or selling an allegedly infringing product outside the forum." *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014) (citations omitted).  LS&Co. has submitted sufficient evidence that Mr. Connolly has committed intentional acts, namely, that he operates interactive websites www.truckerjacket.com and www.greentab.clothing to promote his recycling business and/or to market and sell apparel under the GREEN TAB mark; has partnered with U.S. companies Cotton Incorporated and Zappos.com LLC in conjunction with his denim recycling and apparel business; and engaged in at least one sales transaction within the United States (specifically, California).  *See* Dkt. No. 27-1 ¶¶ 2-12, 14 & Ex. M (Dkt. No. 27-14), Ex. N (Dkt. No. 27-15); *see also* Dkt. No. 13 at 2.

### ii. Expressly aimed at the United States

"The proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 291 (2014) (quoting *Calder*, 465 U.S. at 788).  "And it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.*  Accordingly, establishing sufficient minimum contacts with the forum requires more than the defendant's knowledge of the plaintiff's strong forum connections and the foreseeable harm the plaintiff suffered in the forum. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-70 (9th Cir. 2017).  Thus, courts "must

7

look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Id*. (citing *Walden*, 571 U.S. at 289-90).

In the present case, the purchase made, at the direction of LS&Co.'s counsel, by an individual in Palo Alto, California is not persuasive evidence of conduct expressly aimed at the United States. *See Cisco Sys., Inc. v. Link US, LLC*, No. 18-cv-07576-CRB, 2019 WL 6682838, at *5 (N.D. Cal. Dec. 6, 2019) ("This rule makes sense, since the personal jurisdiction analysis focuses on the defendant's, not the plaintiff's, contacts with the forum."); *Adobe Sys., Inc. v. Nwubah*, No. 18-cv-06063-LHK, 2019 WL 6611096, at *7 (N.D. Cal. Dec. 5, 2019) (stating that such "'evidentiary buys' . . . are simply the kind of 'random, fortuitous, [ ] attenuated contacts that depend on Plaintiff's contacts with the forum, not the contacts of Defendant.").

Nevertheless, LS&Co. has presented evidence of other conduct, which is not disputed, that satisfies the express aiming requirement. For example, Mr. Connolly's truckerjacket.com website promotes and sells allegedly infringing products through statements that appear to specifically target an American market:

> It's simple. Anybody who's been a somebody in America has worn a Trucker Jacket. . . There's a reason our nation's most celebrated cultural icons all wore denim. With a rich historical and cultural heritage, denim is something of a representative fabric for the spirit of America. Denim has humble beginnings, being first worn by laborers in America's manufacturing plants. The fabric was chosen for being simultaneously tough, durable, and comfortable—ideal qualities for long hours of workwear.
>
> Fast-forward through the California Gold Rush, a cowboy craze, and a dissident cultural shift in school classrooms across America, and denim had cemented itself as the go-to apparel for rebels, punks, hippies, low-riders, rockstars, and renegades alike have embraced it, and today, denim's superior cultural status lives on.

Dkt. No. 27-1 ¶ 4 & Ex. B (Dkt. No. 27-3). While Mr. Connolly maintains that "[a]s it relates to goods sold via the website the currency is Australian Dollars" ( Dkt. No. 13-1 ¶ 7), LS&Co.'s counsel attests that the prices on the website "are denoted in U.S. dollars" (Dkt. No. 27-1 ¶ 12 & Ex. H (Dkt. No. 27-9) and Ex. I (Dkt. No. 27-10). Additionally, the website includes links to "www.TruckerJacket.com" (identified as a site for the "U.S.A.") and to "www.TruckerJacket.nyc" (identified as a site directed to New York City customers), and offers a "GREEN TAB" recycling

8

1 service available for "Continental U.S. shipping only." Dkt. No. 27-1 ¶¶ 10-12 & Ex. G (Dkt. No.
2 27-8), Ex. H (Dkt. No. 27-9), Ex. I (Dkt. No. 27-10). Moreover, on the record presented, there
3 appears to be no dispute that Mr. Connolly has partnered with U.S. companies, namely
4 Zappos.com LLC and Cotton Incorporated, to promote and sell his GREEN TAB-brand goods and
5 services, and at least one of those services (denim recycling) appears to be available only in the
6 United States. Dkt. No. 27-1 ¶¶ 5-8 & Ex. C (Dkt. No. 27-4), Ex. D (Dkt. No. 27-5), Ex. E (Dkt.
7 No. 27-6); Dkt. No. 13 at 2. *See, e.g., Ayla, LLC*, 11 F.4th at 980 (finding the express aiming
8 prong was satisfied where, among other things, defendant "promoted its allegedly infringing
9 product by means of references explicitly aimed at Americans."); *Riot Games, Inc.*, 2022 WL
10 17253916, at *6 (finding evidence of express aiming that included promotional content aligned
11 with U.S. holidays, purchase prices in American dollars, and partnership with at least one
12 American streaming service). Nor is there any dispute that Mr. Connolly applied to register the
13 GREEN TAB mark with the U.S. Patent and Trademark Office. Although that application
14 apparently has been suspended pending the present litigation (*see* Dkt. No. 27-12), there is no
15 indication that the application has been withdrawn. *See generally Ayla, LLC*, 11 F.4th at 983 n.4
16 (noting that defendant's trademark application "might be considered compelling evidence that
17 [defendant] has satisfied the purposeful availment or direction test," but declining to consider
18 whether a withdrawn application constitutes a significant United States contact for personal
19 jurisdiction purposes).

      **iii.**   **Causing harm that the defendant knows is likely to be suffered in the United States**

22   "Under the third prong of the *Calder* test, the plaintiff must demonstrate that the
23 defendant's conduct caused harm that it knew was likely to be suffered in the forum." *Riot*
24 *Games, Inc.*, 2022 WL 17253916 at *6 (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th
25 Cir. 2002)). "The importance of this requirement is not the magnitude of the harm, but rather its
26 foreseeability." *Id*. (internal quotations and citation omitted). LS&Co. alleges that Mr.
27 Connolly's activities "misappropriate LS&Co.'s reputation and famous trademarks." Dkt. No. 1
28 ¶ 29. The evidence of express aiming described above, along with the fact that LS&Co. is a well-

9

1 known U.S.-based apparel company, demonstrate that Mr. Connolly knew that harm was likely to
2 be suffered in the United States.
3       Accordingly, LS&Co. has satisfied all three requirements of the *Calder* effects test, and the
4 Court thus finds that Mr. Connolly purposely directed his activities to the United States.

      **b.**      **Claims arising out of defendant's forum-related activities**

In order to satisfy this "nexus" requirement, LS&Co.'s claims "must 'arise out of or relate to the defendant's contacts with the [United States].'" *Ayla, LLC*, 11 F.4th at 983 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021)). In the Ninth Circuit, "a showing of but-for causation to satisfy the nexus requirement" is permitted, but not required. *Id*. at 983 n.5.

LS&Co. satisfies this requirement, as its complaint both arises out of and relates to Mr. Connolly's contacts with the United States. Dkt. No. 1. LS&Co. challenges Mr. Connolly's business activities in connection with his denim jacket and recycling business, using an allegedly infringing GREEN TAB word mark, on the ground that this mark is confusingly similar to LS&Co.'s Tab Mark Family. LS&Co. also contends that Mr. Connolly markets and sells jackets that infringe on its "Arcuate" mark. *See* Dkt. No. 1 ¶¶ 28-32; Dkt. No. 27-1 ¶¶ 4-8, 10-12 & Ex. B (Dkt. No. 27-3), Ex. C (Dkt. No. 27-4), Ex. E (Dkt. No. 27-6), Ex. G (Dkt. No. 27-8), Ex. H (Dkt. No. 27-9), Ex. I (Dkt. No. 27-10); *see also* Dkt. No. 13 at 2. Mr. Connolly's contacts with the United States include the promotional and other activities of which LS&Co. complains.

      **c.**      **Reasonableness requirement**

Because LS&Co. has met its burden to establish that Mr. Connolly purposefully directed his activities at the United States, and that its claims arise out of or relate to those activities, the burden shifts to Mr. Connolly to present a "compelling case" that the exercise of jurisdiction would violate due process and would therefore be unreasonable. *Ayla, LLC*, 11 F.4th at 983. Here, the Court considers seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy;

> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* (quoting *Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018)).

"The purposeful interjection factor in the reasonableness analysis is analogous to the purposeful direction factor." *Id.* (internal quotations and citation omitted). As discussed above, the record presented indicates that Mr. Connolly conducts his business through promotion and marketing directed at American consumers and in partnership with two U.S. companies. This factor weighs in favor of jurisdiction.

With respect to the burden on Mr. Connolly of defending in the United States, he broadly contends that LS&Co. should not have sued him here, given that he lives in Australia. But mere inconvenience of litigating in another country is not dispositive, and Mr. Connolly has presented no evidence of financial hardship or other undue burden that would be imposed if he were required to defend this litigation in the United States. *See Ayla, LLC*, 11 F.4th at 984 ("We recognize that litigation in a distant forum is inconvenient. More importantly, we acknowledge unique burdens placed upon one who must defend oneself in a foreign legal system. However, these burdens do not outweigh the contacts on which [plaintiff's] claims are premised.") (internal quotations and citation omitted); *Riot Games, Inc.*, 2022 WL 17253916 at *8 ("'Unless [the] inconvenience is so great as to constitute a deprivation of due process,' the defendant's burden of defending itself in the forum will not "overcome clear justifications for the exercise of jurisdiction."'") (quoting *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991)). Moreover, "the Ninth Circuit recognizes that '[m]odern advances in communications and transportation have significantly reduced the burden of litigating in another country.'" *Id.* (quoting *Dole Food Co.*, 303 F.3d at 1115).[5] On the record presented, this factor weighs in favor of jurisdiction.

The remaining factors weigh in favor of jurisdiction. The resolution of LS&Co.'s claims are unlikely to undermine Australian sovereignty in view of the territorial nature of LS&Co.'s claims. LS&Co. seeks only to enforce its rights under United States and California trademark and unfair competition laws and challenges only Mr. Connolly's activities in the United States. The

---

[5] Indeed, thus far in this litigation, Mr. Connolly has been permitted to appear at court hearings and conferences via Zoom. *See* Dkt. Nos. 18, 20, 29, 30, 31.

11

1  United States therefore provides "the most efficient judicial resolution of the controversy," and is
2  best suited to provide LS&Co. with "convenient and effective relief." *See Ayla LLC*, 11 F.4th at
3  984 (internal quotations and citation omitted). While there is no evidence that Australia is
4  unavailable as a forum to adjudicate the present trademark dispute, "[w]hether another reasonable
5  forum exists becomes an issue only when the forum state is shown to be unreasonable." *Id*.
6  (internal quotations and citation omitted). For the reasons discussed above, Mr. Connolly has not
7  shown that the United States is an unreasonable forum for this dispute.

Accordingly, the exercise of jurisdiction over Mr. Connolly is reasonable and satisfies the demands of due process. His motion to dismiss LS&Co.'s complaint for lack of personal jurisdiction is denied.

**B.     Venue**

Mr. Connolly appears to contend that venue is improper in this district because he is domiciled in Australia. He did not clearly raise an objection to venue in his answer, and thus the objection is waived. *See* Fed. R. Civ. P. 12(b)(3); *Sandy v. McClure*, No. 08-3052 SC, 2008 WL 4830727, at *2 (N.D. Cal. Nov. 6, 2008) (finding defense of improper venue waived where the defense was not raised in the answer and was raised in a motion after the answer was filed). Even if there was no waiver, there is no dispute that Mr. Connolly resides in Australia. He therefore may be sued in any judicial district. *See* 28 U.S.C. § 1391(c)(3) ("a defendant not resident in the United States may be sued in any judicial district . . .."); *Tatung Co., Ltd. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1051 (C.D. Cal. 2014) ("It is undisputed that Movants are residents of Taiwan. Under 28 U.S.C. § 1391(c)(3), 'a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants.' Therefore, it appears that Movants themselves cannot argue that venue is improper under 28 U.S.C. 1391(b)(1)."); *see also generally Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 587 (N.D. Cal. 2020) ("In terms of venue, Philips, as a foreign entity, may be sued in any judicial district.") (citing 28 U.S.C. § 1391(c)(3)). Accordingly, Mr. Connolly's motion to dismiss for improper venue is denied.

### C. Service of Process

Mr. Connolly contends that he was not properly served pursuant to Rule 4 requirements for service of individuals in a foreign country. *See* Fed. R. Civ. P. 4(f). However, Mr. Connolly did not raise an objection based on improper service in his answer. *See* Dkt. No. 13. Moreover, LS&Co. has submitted evidence showing that in communications with LS&Co. regarding service of process, Mr. Connolly expressly agreed to "accept electronic service of this matter and its documents." Dkt. No. 27-1 ¶ 13 & Ex. J (Dkt. No. 27-11), Ex. K (Dkt. No. 27-12), Ex. L (Dkt. No. 27-13). Accordingly, Mr. Connolly has waived objections based on improper service, and his motion to dismiss on that basis is denied. *See generally Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F.Supp.2d 1038, 1047 (N.D. Cal. 2010) (finding objection to defects in service waived where objection was not raised in defendants' answer).

### D. State a Claim for Relief

Mr. Connolly argues that LS&Co. "[f]ail[s] to state a claim upon which relief can be granted" (Dkt. No. 26 at 5), and thus appears to invoke Rule 12(b)(6), which provides for such a defense. Here, Mr. Connolly seems to contend that LS&Co. will not be able to prove its claims because it reportedly has not "produced a registered design for a Trucker Jacket." Dkt. No. 26 at 5. Matters of *proof*, however, are distinct from standards for *pleading* a viable claim for relief. Generally, a plaintiff is required to plead a plausible claim based on facts that permit a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief."); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Moreover, in a challenge to the sufficiency of a pleading under Rule 12(b)(6), all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Here, Mr. Connolly has not identified any pleading deficiency in LS&Co.'s claims and therefore has not met his burden to show that no claim has been stated. *See, e.g., Carlson v. Colorado Ctr. for Reproductive Med., LLC*, No. 21-cv-06133-MMC, 2021 WL 5494273, at \*3 (N.D. Cal. Nov. 23, 2021) (finding that defendants' conclusory arguments that plaintiffs'

1  allegations did "not amount to any viable cause of action" were insufficient to satisfy their burden
2  to show that no claim had been stated); *Lester v. Mineta*, No. C04-3074 SI, 2006 WL 463515, at
3  *2 (N.D. Cal. Feb. 24, 2006) ("The party moving for dismissal has the burden of proving that no
4  claim has been stated."). Accordingly, Mr. Connolly's motion to dismiss for failure to state a
5  claim is denied.

### E.  Joinder

Citing Rule 19 and contending that he does not design or manufacture the Trucker Jacket identified in LS&Co.'s complaint, Mr. Connolly suggests that there is an "indispensable party" that must be joined in this action. Dkt. No. 26 at 5. Rule 19 requires joinder of persons whose absence would preclude the grant of complete relief, impede the putative party's ability to protect their interests, or subject any of the parties to the danger of inconsistent obligations. Fed. R. Civ. P. 19(a). Mr. Connolly has not identified what other party reportedly needs to be joined in this litigation, much less explained why the joinder of any such party is required in order for the Court to accord complete relief on the claims LS&Co. has asserted against him. Accordingly, Mr. Connolly's motion to dismiss based on an alleged joinder issue is denied.

## IV.  CONCLUSION

Based on the foregoing, Mr. Connolly's motion to dismiss is denied. The Court will concurrently issue a case management order regarding alternative dispute resolution and setting case deadlines.

**IT IS SO ORDERED.**

Dated: March 2, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge

14