UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LEVI STRAUSS & CO., <br> Plaintiff, <br> v. <br> DAVID CONNOLLY, <br> Defendant. | Case No. 22-cv-04106-VKD <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 51 |

Plaintiff Levi Strauss & Co. ("LS&Co.") filed this action against defendant David Connolly, asserting federal and California law claims for trademark infringement, trademark dilution, and unfair competition.[1] *See* Dkt. No. 1. LS&Co. now moves for summary judgment on its federal infringement, unfair competition, and dilution claims.[2] *See* Dkt. No. 51. At the motion hearing, LS&Co. reiterated that it is prepared to waive its damages claims, and further clarified that it is seeking summary judgment on liability issues, and that it intends to seek injunctive relief only. *See* Dkt. No. 60. Mr. Connolly opposes the motion. *See* Dkt. Nos. 52, 53. Upon consideration of the moving and responding papers, as well as the oral arguments presented, the

---

[1] LS&Co. asserted the following five claims for relief: federal trademark infringement, 15 U.S.C. §§ 1114-1117, Lanham Act § 32 (claim 1); federal unfair competition (false designation of origin and false description), 15 U.S.C. § 1125(a), Lanham Act § 43(a) (claim 2); federal dilution of famous marks, 15 U.S.C. § 1125(c), Lanham Act § 43(c) (claim 3); California trademark infringement and dilution, Cal. Bus. & Prof. Code §§ 14200, et seq., Cal. Bus. & Prof. Code § 14247 (claim 4); and California unfair competition, Cal. Bus. & Prof. Code § 17200 (claim 5).

[2] Regardless of the Court's resolution of the present motion, LS&Co. says that it intends to withdraw its claims for damages, as well as its demand for a jury trial. *See* Dkt. No. 51 at 2 n.1.

Court grants in part and denies in part LS&Co.'s motion for summary judgment.[3]

**I.     BACKGROUND**

Unless otherwise indicated, the following background facts are not disputed.

LS&Co. is a well-known clothing company based in San Francisco, California that manufactures, markets, and sells a variety of apparel products, including its traditional Levi's® brand products. *See* Dkt. No. 1 ¶ 4; Dkt. No. 51-1 ¶ 2. LS&Co. owns registrations and common law rights in a number of marks, including the "Arcuate" trademark, a double-arc design that LS&Co. began stitching onto the pockets of its jeans in 1873, as well as the "Tab" trademark, (which has been described as a small marker or tab affixed to the exterior of a garment, at a hip or shirt pocket or shirt flaps) that LS&Co. began adding to its products in 1936. Dkt. No. 1 at 1-2 & ¶¶ 9-20; Dkt. No. 51-1 ¶ 2; *see generally* Dkt. No. 51-2, Ex. C. LS&Co. first registered the Tab trademark in 1938 and first registered the Arcuate trademark in 1943. *See* Dkt. No. 51-2 ¶¶ 5-8 & Exs. C, F.

With respect to its Tab trademark, LS&Co. says that it owns registrations and common law rights that protect a wide array of products, including jeans, skirts, shirts, and jackets. These registrations include a "Retail Services Tab" trademark that LS&Co. has at times used as part of its corporate logo, in retail signage, and on the levi.com website for all of its products and services. *See* Dkt. No. 51 at 6; Dkt. No. 51-2 ¶ 6, Ex. D. LS&Co. contends that most of these registrations are not limited in color, and that LS&Co.'s use of and rights in the Tab trademark are protected in every color. *See* Dkt. No. 51 at 3; Dkt. No. 51-2 ¶ 5 & Ex. C. Additionally, LS&Co. says that it has used the Tab trademark in a variety of colors, including green, on its Levi's® branded products. *See* Dkt. No. 51 at 5; Dkt. No. 51-1 ¶ 3. For example, LS&Co. notes that it "has used a green lettered iteration" of the Tab trademark in connection with environmental initiatives and product lines, and has also "rendered its Tab trademark in green for other collections and projects, including LS&Co.'s recent collaboration with Reese Cooper." Dkt. No. 51-1 ¶¶ 9, 10.

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 9, 15.

1   LS&Co. says that it also owns registered and common law rights in word marks that
2   reference the Tab trademark, including the RED TAB, ORANGE TAB, and SILVERTAB marks.
3   *See* Dkt. No. 51-2 ¶ 7 & Ex. E.  For example, LS&Co. says that it has used the RED TAB word
4   mark for years in connection with its customer loyalty program, and has also sold a variety of
5   RED TAB-branded leisurewear products.  Dkt. No. 51-1 ¶ 4.  LS&Co. says that it has used the
6   ORANGE TAB word mark on products beginning in the 1960's "to distinguish the company's
7   more experimental and unique products, designs, and silhouettes from its traditional denim line."
8   *Id*. ¶ 5.  LS&Co. says it began using the SILVERTAB word mark on a line of apparel in the late
9   1980's and "designed the line with the rise of skateboarding, hip hop culture, and a variety of
10  underground music and counterculture scenes in mind."  *Id*. ¶ 6.  The company says that it has also
11  refreshed and sold ORANGE TAB and SILVERTAB products as "reissues in recent Levi's®
12  assortments."  *Id*.

13  In its motion for summary judgment, LS&Co. collectively refers to the Tab trademark,
14  Retail Services Tab Trademark, and the company's family of TAB-formative word marks as the
15  "Tab Mark Family."  *See* Dkt. No. 51 at 7.

16  Mr. Connolly is domiciled in Australia.  *See* Dkt. No. 26-1 ¶ 2; *see also* Dkt. No. 1 ¶ 5.
17  Sometime around 2021, he started a company selling denim jackets and offering denim recycling
18  services under a GREEN TAB brand.  *See* Dkt. No. 51-2 ¶¶ 3, 9-10 & Exs. G, H.  LS&Co. claims
19  that Mr. Connolly infringes LS&Co.'s Tab and Arcuate trademarks by using the GREEN TAB
20  word mark to brand and promote his retail operations and services, and manufacturing, marketing,
21  and selling products bearing copies of the Arcuate trademark and marks within the Tab Mark
22  Family.  *See* Dkt. No. 1 ¶¶ 29-31; Dkt. No. 51-2 ¶¶ 9-11 & Exs. G-J.

23  In February 2021, Mr. Connolly applied to register GREEN TAB for apparel in Australia
24  and in the United States.  *See* Dkt. No. 51-2 ¶ 4; *see also* Dkt. No. 52 at ECF 2; Dkt. No. 53 at
25  ECF 3; Dkt. No. 53-1 ¶¶ 11, 12.  Prior to filing the present lawsuit, LS&Co. opposed Mr.
26  Connolly's U.S. registration application, which had the effect of staying the proceedings before
27  the Trademark Trial and Appeal Board.  *See* Dkt. No. 51-2 ¶ 4.  LS&Co. states that the Australian
28  trademark office rejected Mr. Connolly's registration application and deemed the mark

1  abandoned. *Id*. Additionally, LS&Co. says that Mr. Connolly's U.S. registration application was
2  similarly rejected and invalidated in May 2023. *See id*. & Ex. B.
3        During discovery in the present litigation, LS&Co. claimed that Mr. Connolly failed to
4  timely or adequately respond to its discovery requests, including its requests for admission. *See*
5  Dkt. Nos. 46, 48. Mr. Connolly did not dispute that he did not timely respond to LS&Co.'s
6  requests for admission. Nor did he address LS&Co.'s argument that those requests must be
7  deemed admitted by operation of Rule 36. Accordingly, the matters in each of LS&Co.'s requests
8  for admission were deemed admitted. *See* Dkt. No. 49 at 4. Mr. Connolly has not sought to
9  withdraw or amend those admissions. Thus, LS&Co. contends that matters essential to the
10 establishment of its claims against Mr. Connolly are uncontested and conclusively established,
11 including that LS&Co. owns valid registrations for the Tab Mark Family and the Arcuate
12 trademark; that Mr. Connolly was aware of LS&Co. and its marks prior to his adoption of the
13 GREEN TAB mark; that he adopted the GREEN TAB mark with the intent to capitalize on
14 LS&Co.'s reputation and goodwill; that the GREEN TAB mark is deceptively similar to
15 LS&Co.'s Tab trademark; and that Mr. Connolly's use of the GREEN TAB mark is likely to cause
16 consumer confusion regarding the origin of the goods and services offered under the GREEN
17 TAB mark. *See* Dkt. No. 51-2 ¶ 2 & Ex. A.
18       Many of the preceding background facts are unopposed by Mr. Connolly. However, Mr.
19 Connolly disputes that LS&Co. has ever used a GREEN TAB design or word mark. *See* Dkt. Nos.
20 52, 53, 53-1. For example, he argues that photos LS&Co. submitted showing use of the Tab
21 trademark in various colors (*see* Dkt. No. 51-1 ¶ 3) do not show a green version of LS&Co.'s Tab
22 trademark, and that other examples provided by LS&Co. show use of a white tab with green
23 letters. *See* Dkt. No. 52 at ECF 2; Dkt. No. 53 at ECF 2; Dkt. No. 53-1 ¶ 6. With respect to
24 LS&Co.'s claim that it has "rendered its Tab trademark in green" for a collaboration with Reese
25 Cooper (*see* Dkt. No. 51-1 ¶ 10), Mr. Connolly notes that the use of a green tab for that
26 collaboration is a recent development, stating that industry blogs announced that collaboration
27 around June 2022. Dkt. No. 52 at ECF 2, 3, 7; Dkt. No. 53 at ECF 2, 3, 7; Dkt. No. 53-1 ¶¶ 15,
28 17-18. Mr. Connolly also contends that aspects of his stitching design differ in critical ways from

LS&Co.'s Arcuate trademark, and he disputes that he has used or copied that mark. *See* Dkt. No. 53-1 ¶ 8; Dkt. No. 13-1 at ECF 3; Dkt. No. 34-1 at ECF 3-6.

LS&Co. moves pursuant to Rule 56 for summary judgment for injunctive relief on its federal law claims for trademark infringement, 15 U.S.C. §§ 1114-1117, Lanham Act § 32 (Claim 1); unfair competition (false designation of origin and false description), 15 U.S.C. § 1125(a), Lanham Act § 43(a) (Claim 2); and dilution of famous marks, 15 U.S.C. § 1125(c), Lanham Act § 43(c) (Claim 3). As noted above, LS&Co. seeks summary judgment on liability issues as to these federal claims.

## II. LEGAL STANDARD

### A. Rule 56 Summary Judgment

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See id.* at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

### B. Rule 36 Requests for Admission

Rule 36(a) provides that a request for admission is deemed admitted unless the responding party timely serves a written answer or objection. Fed. R. Civ. P. 36(a)(3). A matter admitted pursuant to Rule 36(a) is "conclusively established" unless a court, "on motion," permits a party to withdraw or amend its admission. Fed. R. Civ. P. 36(b). A district court may grant summary judgment on the basis of deemed admissions. *See O'Campo v. Hardisty*, 262 F.2d 621, 624 (9th Cir. 1958).

As noted above, the matters in each of LS&Co.'s requests for admission have been deemed admitted pursuant to Rule 36, as Mr. Connolly did not timely respond to LS&Co.'s requests for admission. He did not move to withdraw the deemed admissions, and nothing in his opposition to LS&Co.'s summary judgment motion reasonably can be construed as such a motion.

## III. DISCUSSION

### A. Trademark Infringement, 15 U.S.C. §§ 1114-1117, Lanham Act § 32 (Claim 1)

The Lanham Act provides that "[a]ny person" who, "without the consent of the registrant," "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant[.]" 15 U.S.C. § 1114(1)(a). To prevail on a trademark infringement claim, a plaintiff must show that (1) it has a valid, protectable trademark, and (2) the defendant's use of the mark is likely to cause confusion, or to cause mistake, or to deceive consumers. *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007); *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006).

#### 1. Ownership of federally registered mark

"Registration of a mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." *Applied Info. Scis. Corp.*, 511 F.3d at 970 (internal quotations and citation omitted); *see also* 15 U.S.C. § 1115(a) ("Any registration . . . of a mark registered on the principal register provided by this

1 chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie
2 evidence of the validity of the registered mark and of the registration of the mark, of the
3 registrant's ownership of the mark, and of the registrant's exclusive right to use the registered
4 mark in commerce on or in connection with the goods or services specified in the registration
5 subject to any conditions or limitations stated therein . . ..").

6       LS&Co. has submitted documentation showing that it is the owner of federally registered
7 marks for the Tab trademark, Retail Services Tab trademark, the RED TAB, ORANGE TAB, and
8 SILVERTAB word marks, and the Arcuate trademark. *See* Dkt. No. 51-2 ¶¶ 5-8 & Exs. C-F;
9 *Applied Info. Scis. Corp.*, 511 F.3d at 970. Mr. Connolly has not presented any evidence or
10 argument contesting LS&Co.'s ownership of those marks, or challenging the validity of those
11 registrations. Additionally, LS&Co.'s ownership of the Tab trademark, the Tab Mark Family, and
12 the Arcuate trademark, and the validity of LS&Co.'s registration of those marks, have been
13 deemed admitted. *See* Dkt. No. 51-2, Ex. A (Request for Admission Nos. 4-9). Accordingly,
14 LS&Co. has established the first element of its trademark infringement claim.

### 2. Likelihood of confusion

16       "When the goods produced by the alleged infringer compete for sales with those of the
17 trademark owner, infringement usually will be found if the marks are sufficiently similar that
18 confusion can be expected." *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979),
19 *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th
20 Cir. 2003). "The alleged infringer's intent in adopting the mark is weighed, both as probative
21 evidence of the likelihood of confusion and as an equitable consideration." *Id*. at 348 n.9. Courts
22 analyze likelihood of confusion under the following factors, generally referred to as the *Sleekcraft*
23 factors: (1) strength of the mark; (2) similarity of the marks; (3) proximity of the goods/services
24 sold; (4) similarity in the marketing channels used; (5) type of goods/services and degree of care
25 likely to be exercised by purchasers; (6) evidence of actual confusion; (7) defendant's intent in
26 selecting its mark; and (8) likelihood of expansion into other markets. *Id*. at 348, 349. These
27 factors are not applied mechanically; courts may examine some or all of the factors, depending on
28 their relevance and importance. *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d

7

1062, 1076 (9th Cir. 2006).

### a. Tab Trademark and Tab Mark Family

While LS&Co.'s summary judgment motion relies on some other evidence, it is principally based on Mr. Connolly's deemed admissions. *See* Dkt. No. 51-2, Ex. A. With respect to the Tab trademark,[4] Mr. Connolly's deemed admissions establish that he is not currently licensed or otherwise authorized by LS&Co. to use the Tab trademark; the Tab trademark is strong, famous, distinctive, and widely recognized by the general consuming public in the United States as a designation of LS&Co.'s goods and services; the Tab trademark was strong, famous, distinctive, and widely recognized at the time Mr. Connolly applied to register GREEN TAB in the United States, and at the time he began using GREEN TAB in the United States; the goods listed in Mr. Connolly's U.S. registration application for GREEN TAB "are similar and/or related to the goods and services for which LS&Co.'s Tab Mark . . . [is] registered"; consumers who purchase goods listed in Mr. Connolly's GREEN TAB U.S. registration application also purchase "the goods and services for which LS&Co.'s Tab Mark . . . [is] registered"; Mr. Connolly was aware of the Tab trademark before selecting and adopting GREEN TAB and prior to filing his U.S. registration application for GREEN TAB; he considered the Tab trademark in selecting GREEN TAB; he adopted GREEN TAB with the intent of capitalizing on the goodwill of LS&Co.'s Tab trademark; the Tab trademark is similar in visual appearance, sound, and connotation to GREEN TAB; the Tab trademark and GREEN TAB create a similar commercial impression; the GREEN TAB is deceptively similar to the Tab trademark, and is likely to cause consumer confusion regarding the source, sponsorship, approval, or affiliation with LS&Co.'s Tab trademark; he is aware of instances of consumer confusion regarding GREEN TAB and the Tab trademark; and if registered, GREEN TAB is likely to impair the distinctiveness of the Tab trademark. Dkt. No. 51-2, Ex. A (Request for Admission Nos. 1, 10, 13, 16, 19, 22, 25, 28, 31, 34, 37, 40, 43, 46, 47, 49, 51, 58,

---

[4] LS&Co.'s requests for admission define the term "Tab Mark" to mean the mark "described and depicted in Paragraphs 9-14 of the Complaint[.]" Dkt. No. 51-2, Ex. A at ECF 4. Paragraphs 9-14 of the complaint describe LS&Co.'s Tab trademark and its Retail Services Tab trademark. *See* Dkt. No. 1 ¶¶ 9-14.

8

61-65, 70, 71, 72, 73).

With respect to the "Tab Mark Family,"[5] Mr. Connolly's deemed admissions establish that he is not currently licensed or otherwise authorized by LS&Co. to use those marks; the marks are strong, famous, distinctive, and widely recognized by the general consuming public in the United States as a designation of LS&Co.'s goods and services; the marks were strong, famous, distinctive, and widely recognized at the time Mr. Connolly applied to register GREEN TAB in the United States, and at the time he began using GREEN TAB in the United States; the goods listed in Mr. Connolly's U.S. registration application for GREEN TAB "are similar and/or related to the goods and services for which . . . LS&Co.'s Tab Mark Family [is] registered"; consumers who purchase goods listed in Mr. Connolly's GREEN TAB U.S. registration application also purchase "the goods and services for which . . . LS&Co.'s Tab Mark Family [is] registered"; Mr. Connolly was aware of the Tab Mark Family before selecting and adopting GREEN TAB and prior to filing his U.S. registration application for GREEN TAB; he considered the Tab Mark Family in selecting GREEN TAB; and he adopted GREEN TAB with the intent of capitalizing on the goodwill of LS&Co.'s Tab Mark Family. *See* Dkt. No. 51-2, Ex. A (Request for Admission Nos. 2, 11, 14, 17, 20, 23, 26, 29, 32, 35, 38, 41, 43, 44, 46, 47, 49, 51, 58, 61).

More generally, the matters deemed admitted establish that Mr. Connolly was aware of LS&Co. prior to his selection and adoption of GREEN TAB and prior to the time he filed his U.S. registration application for GREEN TAB; LS&Co. did not consent to his use of GREEN TAB or his U.S. application to register GREEN TAB; Mr. Connolly's use of GREEN TAB "is likely to call to mind LS&Co. for a significant portion of the United States consuming public"; and he intended his use of GREEN TAB to "call to mind LS&Co. for a significant portion of the United States consuming public." *See* Dkt. No. 51-2, Ex. A (Request for Admission Nos. 48, 50, 54-57).

---

[5] LS&Co's requests for admission define the term "Tab Mark Family," somewhat recursively, to "mean[] LS&Co.'s Tab Mark and family of TAB-formative word marks as described in Paragraph 16 of the Complaint." Dkt. No. 51-2, Ex. A at ECF 4. Paragraph 16 of LS&Co.'s complaint, in turn, defines "Tab Mark Family" as "the Tab Trademark and LS&Co.'s family of TAB-formative word marks[.]" Dkt. No. 1 ¶ 16.

9

1    Additionally, with respect to "Infringing Products and Services,"[6] Mr. Connolly's deemed
2    admissions are that his target consumers include LS&Co.'s customers; the alleged infringing
3    products and services are marketed to LS&Co.'s customers; consumers of the alleged infringing
4    products and services "exercise a low degree of care when deciding whether to purchase any of"
5    those products or services; and the alleged infringing products and services are marketed,
6    advertised, sold, or distributed in one or more of the same or similar channels as LS&Co.'s goods
7    and services. *See* Dkt. No. 51-2, Ex. A (Request for Admission Nos. 59, 60, 66-68).

     In addition to these deemed admissions, other evidence demonstrates that Mr. Connolly's
products are related to those of LS&Co. He applied to register GREEN TAB for "[c]lothing, namely, jackets, pants, shirts, caps being headwear, undergarments, socks, underpants, and singlets; 100% cotton denim clothing, namely, jackets, pants, shirts, and caps being headwear." Dkt. No. 51-2, Ex. B; *see also* Dkt. No. 51-2, Exs. G-J. LS&Co.'s registrations for the Tab, ORANGE TAB, and SILVERTAB trademarks cover many of these same types of apparel, including jackets. *See* Dkt. No. 51-2, Exs. C & E; *see also id*. (Tab trademark Reg. Nos. 516,561 and 2,791,156; ORANGE TAB Reg. No. 5,495,150; SILVERTAB Reg. No. 2,132,082). LS&Co. has also presented evidence indicating that LS&Co. and Mr. Connolly both use the internet to market or otherwise promote their respective products and services. *See* Dkt. No. 51-2, Exs. G, H; *see also* Dkt. No. 51-1 ¶ 8.

     Mr. Connolly argues that LS&Co. has not used a green version of its Tab trademark, until recently in collaboration with Reese Cooper. *See* Dkt. No. 52 at ECF 2; Dkt. No. 53 at ECF 2; Dkt. No. 53-1 ¶ 6. LS&Co. does not dispute that its use of a green-colored tab in collaboration with Reese Cooper was a recent development. *See* Dkt. No. 51-1 ¶ 10. Nor does LS&Co. dispute that it previously used a white tab with green lettering for "jeans produced with more climate

---

[6] LS&Co.'s requests for admission define the term "Infringing Products and Services" to mean all goods and/or services in connection with which [Mr. Connolly] ha[s] used, [is] using, or intend[s] to use the Infringing Mark, [i]ncluding but not limited to the goods listed in [Mr. Connolly's U.S. registration application for GREEN TAB] and the services described and depicted in Paragraphs 28 and 29 of the Complaint, as well as all of [Mr. Connolly's] products bearing copies or imitations of LS&Co.'s Arcuate Mark, LS&Co.'s Tab Mark, and LS&Co.'s Tab Mark Family as described and depicted in Paragraph 30 of the Complaint."

10

friendly processes." *Id.* ¶ 9. Nothing in the record presented indicates that LS&Co. has used the words "Green Tab," as a word mark or in any other form in connection with it goods or services. However, evidence indicates that third-party retailers refer to LS&Co.'s apparel bearing a white tab with green letters as "Levi's Green Tab" clothing (*see* Dkt. No. 51-1 ¶ 9; *see also* Dkt. No. 60 at 15), suggesting that consumers are likely to associate GREEN TAB with LS&Co. *See generally Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 633 (9th Cir. 2005) ("The standard for deciding whether the parties' goods or services are 'related' is whether customers are 'likely to associate' the two product lines," and "whether the buying public could reasonably conclude that the products came from the same source.") (citation omitted); *see also Sleekcraft Boats*, 599 F.2d at 348 n.10 ("Related goods are those products which would be reasonably thought by the buying public to come from the same source if sold under the same mark.") (internal quotation marks and citation omitted). Mr. Connolly has presented no evidence suggesting otherwise.

On this record, there is no genuine issue of material fact regarding the likelihood of confusion regarding Mr. Connolly's use of GREEN TAB in connection with his apparel products, at least with respect to LS&Co.'s Tab trademark (including the "Retail Services Tab" trademark), the ORANGE TAB word mark, and the SILVERTAB word mark. For the reasons discussed above, based on the evidence and deemed admissions, no reasonable trier of fact could find in Mr. Connolly's favor with respect to the majority of the *Sleekcraft* factors, including the strength of the LS&Co. marks, the similarity between those LS&Co. marks and GREEN TAB, the proximity or relatedness of the parties' products, the similarity of the marketing channels used, the low degree of care likely to be used by purchasers, and Mr. Connolly's intent to use GREEN TAB to capitalize on those LS&Co. marks. An accused infringer's "intent to deceive is strong evidence of a likelihood of confusion," *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002), and "[w]hen the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived," *Sleekcraft*, 599 F.3d at 354. Although LS&Co. has presented no evidence of actual confusion, "[t]he failure to prove instances of actual confusion is not dispositive against a

11

1   trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of
2   actual confusion make its absence generally unnoteworthy." *Brookfield Commc'ns, Inc. v. West*
3   *Coast Ent. Corp.*, 174 F.3d 1036, 1050 (9th Cir. 1999); *see also Sleekcraft Boats*, 599 F.2d at 353
4   ("Because of the difficulty in garnering such evidence, the failure to prove instances of actual
5   confusion is not dispositive.").

6   However, LS&Co. has not demonstrated that it is entitled to summary judgment of
7   infringement with respect to any Tab mark or any mark within the Tab Mark Family based on Mr.
8   Connolly's denim recycling services. A claim for trademark infringement under section 32 of the
9   Lanham Act requires a registered mark. *See Brookfield Commc'ns, Inc.*, 174 F.3d at 1046 n.8.
10  Although LS&Co. says that it has "environmental initiatives and product lines that reflect its
11  commitment to sustainability" (*see* Dkt. No. 51-1 ¶ 9), nothing in the record presented
12  demonstrates that LS&Co. offers denim recycling services or that it has any plans to do so.
13  LS&Co. acknowledges elsewhere in its briefing that such services are not covered by its
14  registrations. *See* Dkt. No. 51 at 25.

15  Nor is LS&Co. entitled to summary judgment on its federal trademark infringement claim
16  with respect to its RED TAB mark. While LS&Co. says that it has "sold a variety of RED TAB-
17  branded products," including on clothing such as "sweatshirts, shorts, hoodies, and other
18  leisurewear" (*see* Dkt. No. 51-1 ¶ 4), LS&Co.'s RED TAB registration does not concern goods,
19  but rather services—namely "Customer loyalty services and customer club services for
20  commercial, promotional and/or advertising purposes" and "Customer loyalty program services
21  featuring rewards in the form of discounted shipping services, discounted retail products, and early
22  access to retail products and other offers." Dkt. No. 51-2, Ex. E at ECF 2. Notwithstanding what
23  Mr. Connolly's deemed admissions may establish with respect to LS&Co.'s marks generally,
24  LS&Co. has not sufficiently demonstrated that Mr. Connolly's deemed admissions establish a
25  likelihood of confusion with respect to the RED TAB mark specifically.

26  Accordingly, the Court grants LS&Co.'s motion for summary judgment on liability for
27  federal trademark infringement regarding Mr. Connolly's use of GREEN TAB in connection with
28  "[c]lothing, namely, jackets, pants, shirts, caps being headwear, undergarments, socks, underpants,

12

1   and singlets; 100% cotton denim clothing, namely, jackets, pants, shirts, and caps being

2   headwear," with respect to LS&Co.'s Tab trademark (including the "Retail Services Tab"

3   trademark), the ORANGE TAB word mark, and the SILVERTAB word mark. LS&Co.'s motion

4   is otherwise denied.

### b.     Arcuate Trademark

With respect to the Arcuate trademark, there appears to be no genuine dispute of material fact that Mr. Connolly's apparel products are related to those of LS&Co.; that LS&Co.'s Arcuate trademark registrations include jackets; and that both parties use the internet to market or otherwise promote their respective products and services. *See* Dkt. No. 51-2, Ex. B; *id.* Ex. F (Arcuate trademark Reg. Nos. 1,139,254 and 2,794,649); *see also id.*, Exs. G, H. Additionally, LS&Co. says that it purchased a jacket, offered through Mr. Connolly's website, that LS&Co. contends bears a replica of the Arcuate stitching design. *See id.* ¶ 11 & Exs. I, J.

Mr. Connolly argues that he does not infringe the Arcuate trademark because the stitching on his products differs with respect to what he contends are key features, including the color of the thread and the lack of a "diamond" shape that he says is present in the Arcuate trademark. *See* Dkt. No. 34-1; *see also* Dkt. No. 53-1 ¶ 7; Dkt. No. 60 at 23. There appears to be no dispute that the parties' respective stitching designs may be similar, but not identical. While Mr. Connolly's deemed admissions and other evidence regarding Mr. Connolly's business may tend to support a finding of likelihood of confusion under the *Sleekcraft* factors (including the strength and distinctiveness of the Arcuate trademark), nothing in those admissions conclusively establishes that his stitching design is confusingly similar to the Arcuate trademark. Dkt. No. 51-2, Ex. A (Request for Admission Nos. 3, 12, 15, 18, 21, 24, 27, 30, 33, 36, 39, 42, 43, 45, 49, 51, 59, 60, 66-68). LS&Co. maintains that Mr. Connolly's stitching design is virtually indistinguishable from the Arcuate trademark, and that any differences between the parties' designs is immaterial. Those are factual matters that must be tried and are not appropriate for summary adjudication.

Accordingly, LS&Co.'s motion for summary judgment on liability for federal trademark infringement with respect to its Arcuate trademark is denied.

### B. Unfair Competition (False Designation of Origin and False Description), 15 U.S.C. § 1125(a), Lanham Act § 43(a) (Claim 2)

Section 43 of the Lanham Act provides a cause of action for anyone injured by unfair competition against "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation or origin, false or misleading description of fact" which "is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval" of the goods or services. 15 U.S.C. § 1125(a)(1)(A). Although a claim for trademark infringement under section 32 of the Lanham Act requires ownership of a registered mark, a claim for unfair competition under section 43 of the Lanham Act does not have such a requirement and "protects against infringement of unregistered marks and trade dress as well as registered marks." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1046 n.8. "Despite these differences, the analysis under the two provisions is oftentimes identical," *see id.*, and "[t]he 'ultimate test' for unfair competition is exactly the same as for trademark infringement: whether the public is likely to be deceived or confused by the similarity of the marks," *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).

For the reasons discussed above, there is no genuine issue of material fact regarding liability for trademark infringement based on Mr. Connolly's use of GREEN TAB in connection with "[c]lothing, namely, jackets, pants, shirts, caps being headwear, undergarments, socks, underpants, and singlets; 100% cotton denim clothing, namely, jackets, pants, shirts, and caps being headwear," with respect to LS&Co.'s Tab trademark (including the "Retail Services Tab" trademark), the ORANGE TAB word mark, and the SILVERTAB word mark. LS&Co.'s motion for summary judgment on its federal unfair competition claim is granted on that same basis with respect to those marks. However, LS&Co.'s motion is otherwise denied.

### C. Dilution of Famous Marks, 15 U.S.C. § 1125(c), Lanham Act § 43(c) (Claim 3)

"Subject to principles of equity," section 43(c) of the Lanham Act provides "the owner of a famous mark that is distinctive" with a cause of action "against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark[.]"

14

15 U.S.C. § 1125(c)(1). Such a claim may succeed "regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." *Id*. To prove a claim for dilution, "a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008).

LS&Co. suggests that when the parties' respective products are competitive, the dilution analysis is similar to the test for likelihood of confusion under a traditional infringement analysis. *See* Dkt. No. 51 at 23-24. However, as noted above the statute itself indicates that confusion and competition are irrelevant to a dilution claim. 15 U.S.C. § 1125(c); *see also generally* 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition*, § 24:72 at 24-220 (4th ed. 2015) ("Dilution is not synonymous with confusion-caused 'injury' or 'damage' to the senior user's mark. Rather, . . . the legal concept of dilution presumes that defendant's use of the mark does *not* cause a likelihood of confusion over source, sponsorship, affiliation or connection."). While LS&Co. notes that Mr. Connolly's deemed admissions establish, for example, that LS&Co.'s marks are famous, and that its marks had such status before he engaged in the conduct at issue in this suit (*see* Dkt. No. 51-2, Ex. A (Request for Admission Nos. 19-21, 31-33, 40-42)), LS&Co.'s analysis regarding dilution is cursory and does not sufficiently demonstrate that Mr. Connolly's deemed admissions establish that LS&Co. is entitled to summary judgment regarding dilution as to any of its specific marks.

Accordingly, LS&Co.'s motion for summary judgment regarding liability on its dilution claim is denied.

### IV. CONCLUSION

Based on the foregoing, LS&Co.'s motion for summary judgment regarding liability on its claim for federal trademark infringement and unfair competition is granted in part and denied in part. LS&Co.'s motion for summary judgment regarding liability on its dilution claim is denied.

In view of the Court's rulings above, and as the Court has received pretrial materials from only one party, the final pretrial conference scheduled for March 6, 2024 is vacated. Instead, the

parties shall confer and by **March 11, 2024** file a status report regarding (1) a proposed schedule for any further proceedings as to remaining claims and issues; and (2) any other matters that may facilitate a just and efficient disposition of this case.

**IT IS SO ORDERED.**

Dated: March 1, 2024

Virginia K. DeMarchi
United States Magistrate Judge